IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JOHN A. TARPOFF, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | Civil No. 3:09-CV-00411-DRH-CJP |
| | ) | Judge David R. Herndon |
| UNITED STATES OF AMERICA, | ) | Magistrate Judge Philip M. Frazier |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## JOHN A. TARPOFF'S TRIAL BRIEF

Plaintiff John A. Tarpoff ("Mr. Tarpoff") respectfully submits the following trial brief in accordance with the Court's pre-trial order dated December 6, 2010.

The evidence to be presented at trial will demonstrate that the jury should return a verdict in Mr. Tarpoff's favor because Mr. Tarpoff was neither a person responsible for collecting and remitting Gateway Beef LLC's ("Gateway Beef") payroll taxes nor did Mr. Tarpoff willfully fail to do so.  This is a case where the Internal Revenue Service has erroneously assessed a civil penalty for unpaid payroll taxes against the wrong person.  The Internal Revenue Service should have assessed its penalty against Samuel Brach ("Mr. Brach").  The evidence will show that Mr. Brach, not Mr. Tarpoff, owned, managed and controlled Gateway Beef.  To quickly demonstrate this truth, Marsha Caughron ("Ms. Caughron"), who was Gateway Beef's former bookkeeper and office manager and who computed the company's payroll tax withholdings, testified at deposition:

> Q.   And it was Mr. Brach's responsibility to make sure that
>      Gateway Beef, LLC paid its payroll taxes; is that correct?
>
> A.   Oh, yes.

> Q. It's also an accurate statement it was not John Tarpoff's duty to make sure that Gateway Beef, LLC paid its payroll taxes?
>
> A. Yes. That would be accurate. It wasn't.

(Caughron Dep. at 35:12-20). Ms. Caughron will be called by Mr. Tarpoff as a witness at trial.

Mr. Tarpoff was a non-executive, mid-level employee of Gateway Beef. He did not own the company, did not have the authority to decide which of Gateway Beef's creditors to pay and did not willfully fail to remit tax payments to the United States of America (the "United States" or the "Government"). Indeed, Gateway Beef owes Mr. Tarpoff thousands of dollars in reimbursements for business and cattle purchasing related expenses which Mr. Tarpoff incurred while employed by Gateway Beef. Moreover, the company has approximately $25,000.00 still sitting in a bank account at the Bank of Edwardsville. It makes no sense that Mr. Tarpoff would not have reimbursed his own business expenses if he truly was able to control Gateway Beef's bank accounts such that Mr. Tarpoff could have prefered one of Gateway Beef's creditors over another.

The Government's case against Mr. Tarpoff depends entirely upon the fact that Mr. Tarpoff was an authorized signator on certain Gateway Beef corporate checking accounts and that Mr. Tarpoff did in fact sign checks on the company's behalf. Mr. Tarpoff does not run from this fact. The United States Court of Appeals for the Seventh Circuit instructs "that **merely because a corporate officer has check-signing responsibilities** and his corporation is in financial trouble, it **does not follow** that he can he can be held **liable** for any and all **failures to pay withholding taxes**." *Wright v. United States*, 809 F.2d 425, 428 (7th Cir. 1987) (emphasis added). The record evidence and testimony to be offered at trial will show that Mr. Brach or his designee in New York had to approve all payments and that Mr. Tarpoff only signed checks pursuant to Mr. Brach's or his designee's authorization. Mr. Tarpoff's check writing ability was

an internal control against Ms. Caughron's bookkeeping and check printing ability (electronic checks) and a function of Mr. Brach's desire to have someone on the ground in Illinois who could make payments at Mr. Brach's direction.

### The Granite City Packing Facility

The United States' dispute with Mr. Tarpoff has its genesis in a Granite City slaughter house, the farm fields and cattle ranches of Northern Missouri and Central Illinois and perhaps most importantly in the back offices of Mr. Brach's grocery store on Long Island in Flushing, New York.

Mr. Tarpoff and members of his family have long owned the meat packing facility located at 1428 Edwardsville Road in Granite City, Illinois (the "Granite City Packing Facility"). Mr. Tarpoff's grandfather founded the Tarpoff Packing Company in the 1930's, handed the family business off to his sons, including Mr. Tarpoff's father, who in turn taught the next generation of Tarpoffs the meat packing trade.  Eventually Mr. Tarpoff, his brother and his cousin inherited the business.  Mr. Tarpoff started at the family business in 1975 after he graduated from the University of Missouri, eventually rose to head the family's company as president of Tarpoff Packing Company, and in 2000 after certain family members fell ill and in the face of changing market conditions made the decision, along with his family, to cease operations at the Granite City Packing Facility.  Mr. Tarpoff then went to work for a division of Cargill after his family shut down the Granite City Packing Facility.  While working for Cargill, Mr. Taropff was approached by Gateway Beef Cooperative, a group of fifty-nine cattle farmers located in Northern Missouri and Central Illinois, and eventually became an employee of Gateway Beef Cooperative.

Gateway Beef Cooperative hired Mr. Tarpoff to advise members of the cooperative on production related issues, including genetic and feed issues.  In approximately 2003, Gateway

Beef Cooperative became interested in operating the Granite City Packing Facility as a result of animosity between the cattle growers and large packing companies.  The members of Gateway Beef Cooperative believed that they could earn a higher yield on their product by running their own packing plant.  Gateway Beef Cooperative therefore negotiated to lease the inoperative Granite City Packing Facility from Tarpoff Packing Company and retained Mr. Tarpoff to run the Granite City Packing Facility as an employee of Gateway Beef Cooperative.

Shortly after Gateway Beef Cooperative's production at the Granite City Packing Facility commenced, a rabbi representing Mr. Brach approached Gateway Beef Cooperative to inquire whether Gateway Beef Cooperative had any interest in doing a kosher kill.  Mr. Brach hoped to undercut his competitors in New York by acquiring a kosher beef production operation in the Midwest.  Mr. Brach, through a company he controlled, entered into an agreement with Gateway Beef Cooperative to organize and operate Gateway Beef.

### Mr. Tarpoff's Employment by Gateway Beef

Mr. Tarpoff was responsible for running Gateway Beef's day-to-day procurement, slaughter and packing operations.  Some weeks Mr. Tarpoff worked in excess of one-hundred hours a week for Gateway Beef.  In the wee hours of the morning, he would rise and drive out to cattle auctions and farms throughout Illinois and Missouri in order to procure cattle on behalf of Gateway Beef.  It was then Mr. Tarpoff's job to arrange for transportation of the cattle to the Granite City Packing Facility where Mr. Tarpoff would then oversee the non-Kosher portion of the slaughter and packing.  At his deposition, Mr. Tarpoff testified:

> Q. And if the co-op members did not have cattle available, where did Gateway Beef, LLC purchase the cattle?
>
> A. I would go out to sale barns to buy other cattle out in the country from other farmers.

> My days consisted of getting up at like I had mentioned earlier, 10 [sic] to 2:00 in the morning. I would leave the house by 2:20, 2:30. I was at the packinghouse by quarter to 3:00. I would be there until 6:30, 7:00, at which time Monday, Tuesday, Wednesday, Friday I would go to sale barns and buy cattle. I would be back anywhere from 11:00 to 2:00 and then go in the coolers and work or back on the kill floor and work wherever I was needed.
>
> On Saturday morning we worked from 4:00 in the morning until roughly 10:00 in the morning to noon. Then I would go out in the country and look at cattle for co-op members or if they didn't have cattle available, other farmers. Sunday I would spend all day driving looking for cattle also.
>
> Q.   How many hours per week did you work in total for Gateway Beef, LLC?
>
> A.   There were a number of weeks I didn't keep track, but my wife did that. It was over a hundred hours, and that was for an extended period of time.

Tarpoff Dep. Tr. at 51:17-52:19. Mr. Tarpoff did not oversee or manage Gateway Beef's accounting or financial functions. Those responsibilities were vested in the company's owners, primarily Mr. Brach.

## Procedural History

Mr. Tarpoff's road to trial has been long and arduous. By the time of trial, Mr. Tarpoff will have been living under the specter of the Government's payroll tax penalty for approximately four years. The United States has rejected Mr. Tarpoff's multiple attempts to resolve this matter, has ignored the evidence and multiple affidavits Mr. Tarpoff submitted in the administrative process which demonstrated that the Internal Revenue Service should have collected Gateway Beef's unpaid payroll taxes from Mr. Brach's substantial multi-million dollar estate, and has even refused to levy against monies which Gateway Beef still has sitting in an account at the Bank of Edwardsville and which Mr. Tarpoff has offered to the government on a silver platter. Mr. Tarpoff has been forced to endure mismanagement and vengeance perpetrated by agents, appeals officers and other representatives of the Internal Revenue Service which if

undertaken by a private organization would border on negligent, if not malicious conduct, and would certainly bankrupt any organization that operated in such a haphazard manner or, in the case of a public company, could give rise to a shareholder's derivative suit. *Cf. Maxwell v. KPMG LLP*, 520 F.3d 713, 718 (7th Cir. 2008) ("The filing of lawsuits by a going concern is properly inhibited by concern for future relations with suppliers, customers, creditors, and other persons with whom the firm deals (including government) and by the cost of litigation. . . . Judges must therefore be vigilant in policing the litigation judgment exercised by trustees in bankruptcy . . . ."). Against this background, Mr. Tarpoff welcomes the opportunity to present his case to the jury and to clear his name.

In June and July, 2004, Gateway Beef submitted its quarterly tax statements to the Internal Revenue Service on Form 941. The returns were not prepared or signed by Mr. Tarpoff. According to the Internal Revenue Service's own records, on October 12, 2004, an agent of the Internal Revenue Service spoke with a representative of Brach's Glatt Kosher Meat Markets, Inc. and was told that "Mr. Sam Brock is the person whom handles the taxes . . . ." Plaintiff's Trial Exhibit 32. The Internal Revenue Service then engaged in a fourteen month long investigation whereby its own records show agents of the Internal Revenue Service contacted employees of Brach's Glatt Kosher Meat Market, Inc., members of Gateway Beef Cooperative and even Mr. Tarpoff's brother. It was not until December 16, 2005 that the Internal Revenue Service turned their attention to Mr. Tarpoff when an agent went out to Mr. Tarpoff's house and left notes scotch taped to Mr. Tarpoff's neighbor's residence asking Mr. Tarpoff to call her (to say the least this alarmed Mr. Tarpoff and his neighbor).

On March 12, 2007, the Internal Revenue Service sent Mr. Tarpoff notice that it was going to levy a payroll tax penalty against Mr. Tarpoff. Mr. Tarpoff filed an objection

explaining in detail that Mr. Brach was the responsible party and provided evidentiary support of his innocence including an affidavit from Mr. Tarpoff and copies of letters Mr. Brach and his representative had sent to the Bank of Edwardsville regarding Mr. Tarpoff's limited role in the company.  However, the Internal Revenue Service agent whom had left the note taped to Mr. Tarpoff's neighbor's garage door had an ax to grind since Mr. Tarpoff had looked her up in the phone book and called her at home during the short window in which Mr. Tarpoff was in town. Mr. Tarpoff appealed the investigating agent's decision internally through the Internal Revenue Service's administrative processes but was bounced between different agents until he finally received a right to sue letter on February 3, 2009.  This lawsuit followed.

## **Standard of Review**

At trial, Mr. Tarpoff as the plaintiff will bear the burden to persuade the jury, by a preponderance of the evidence, that he was not a responsible person who willfully failed to remit Gateway Beef's payroll taxes.  *United States v. Running*, 7 F.3d 1293, 1297 (7th Cir. 1993) (holding in favor of plaintiff and reversing trial court's judgment entered after trial in favor of United States because evidence demonstrated that plaintiff did not willfully fail to company's payroll taxes).

Under 26 U.S.C. §6672, the IRS may only levy a civil penalty against Mr. Tarpoff if he was responsible for paying Gateway Beef's payroll taxes and willfully failed to do so.  *Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir. 1994).  The United States Court of Appeals for the Seventh Circuit instructs that:

> Under section 6672 of the U.S. Code, a person must meet two criteria to be personally liable for unpaid taxes for a given quarter. First, he must be required to collect, truthfully account for and pay over the tax.  A person meeting this criterion is commonly referred to as a responsible person.  Second, it must be established that the responsible person willfully failed to collect, account for or pay

> over the tax owed.  Willful in this context means that the person either knew the taxes were not being turned over to the government and nonetheless opted to pay other creditors, or recklessly disregarded a known risk that the taxes were not being paid over; the government is not required to establish that the responsible person deliberately sought to defraud the government.

*United States v. Kim*, 111 F.3d 1351, 1357 (7th Cir. 1997) (internal quotations and citations omitted).  The appellate court has further admonished "that **merely** because a corporate officer has **check-signing responsibilities** and his corporation is in financial trouble, it **does not follow** that he can he can be held **liable** for any and all **failures to pay withholding taxes**." *Wright v. United States*, 809 F.2d 425, 428 (7th Cir. 1987) (emphasis added); *see also Jefferson v. United States*, 546 F.3d 477, 480 (7th Cir. 2008) (reaffirming that "merely because a corporate officer has check-signing responsibilities and his corporation is in financial trouble, it does not follow he can be held liable for any and all failures to pay withholding taxes" but distinguishing *Wright* because president of company's board of directors "had significant involvement in [delinquent company's] financial affairs that included more than simply writing checks."); *Stillwell v. United States*, No. 94-cv-831-WDS, 1996 WL 756515, at *3 (S.D. Ill. 1996) (denying cross motions for summary judgment and holding that there was a question of fact for jury were evidence showed that while plaintiff "may have signed some checks, she did not make the decision as to who got paid.").

### Relevant Evidence

Mr. Tarpoff will call three witnesses at trial:  (1) Marsha Caughron, (2) Charles Unger and (3) John A. Tarpoff.

Ms. Caughron is Gateway Beef's former book keeper and office manager.  She kept Gateway Beef's books and records in Granite City, Illinois and ran the company's local front office operations.  Ms. Caughron calculated Gateway Beef's payroll tax withholdings, ran

payroll, kept the employee's timecards and managed accounts payable.  Ms. Caughron submitted an affidavit as part of the Internal Revenue Services' administrative proceeding and gave a deposition in this case.  Based upon her prior testimony, it is expected that Ms. Caughron will testify at trial about the operations of Gateway Beef and Mr. Tarpoff's and Mr. Brach's respective responsibilities within the company.

Mr. Unger is an executive officer at the Bank of Edwardsville.  He is personally familiar with Gateway Beef's banking files.  Mr. Brach and his attorney sent correspondence to Mr. Unger and met with Mr. Unger at the Bank of Edwardsville regarding Mr. Tarpoff's role in Gateway Beef and Mr. Tarpoff's limited check writing authority.  Mr. Unger gave a deposition in this case.  Based upon his prior testimony, it is anticipated that Mr. Unger will testify at trial about Gateway Beef's bank accounts, and Mr. Brach's instructions as to Mr. Tarpoff's check writing authority.

Mr. Tarpoff will take the stand on his own behalf.

Respectfully submitted,

**JOHN A. TARPOFF**

By:  \_/s/ Mark A. Bradford_____
     One of His Attorneys

Mark A. Bradford
**DLA Piper LLP (US)**
203 N. LaSalle Street, Suite 1900
Chicago, Illinois  60601-1293
Tel.:  (312) 368-6808
FAX:  (312) 251-2161
Email:  mark.bradford@dlapiper.com

**CERTIFICATE OF SERVICE**

      Mark A. Bradford, an attorney, certifies that on the 14th day of January, 2011, he caused a copy of the foregoing John Tarpoff's Trial Brief to be filed on the Court's electronic PACER system which will serve an electronic copy on the following counsel of record:

Raagnee Beri
Andrea Kafka
USDOJ – Tax Division – Washington, D.C.
Tax Division, Ben Franklin Station
P.O. Box 55
Washington, D.C. 20044
(202) 305-7917
raagnee.beri@usdoj.gov
Andrea.Kafka@usdoj.gov

                                                  /s/ Mark A. Bradford
                                                       Mark A. Bradford