**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**


**JOHN A. TARPOFF,**
**Plaintiff,**

**v.**

**UNITED STATES OF AMERICA,**
**Defendant.**                                      **No. 09 - CV - 00411 DRH**


**MEMORANDUM & ORDER**

**HERNDON, Chief Judge:**

**I. INTRODUCTION**

This matter is before the Court on defendant United States of America's renewed motion for judgment as a matter of law and alternative motion for a new trial (Doc. 64). A jury trial was held from March 14–16, 2011, to decide whether plaintiff John A. Tarpoff was personally liable under 26 U.S.C. § 6672 for Social Security and income taxes that his former employer had failed to pay the IRS. The jury found for plaintiff (Doc. 48).

Defendant now moves for renewed judgment as a matter of law under Federal Rule of Civil Procedure 50(b), contending there was not a sufficient evidentiary basis for the jury to have found plaintiff was not a responsible person who willfully failed to pay the taxes. In the alternative, defendant moves for a new trial under Rule 59, claiming that the jury's verdict was against the weight of evidence and that the jury

instructions did not sufficiently state the law. For the reasons that follow, defendant's motions are **DENIED**.

Still pending before the Court is plaintiff's motion for judgment on the jury's verdict and for attorney's fees and costs (Doc. 55), which has been held in abeyance until now. Defendant was previously given 14 days to respond after the Court rendered its decision in today's order (Doc. 62). But in the meantime plaintiff has filed a motion to supplement his pending motion (Doc. 70). The motion to supplement is **GRANTED**, and instead of 14 days after today's order, defendant will have the customary time to respond to plaintiff's motion (Doc. 55) after the supplement is filed. *See* SDIL-LR 7.1.

## II. BACKGROUND

Plaintiff John A. Tarpoff was the head cattle buyer at Gateway Beef, LLC,[1] a slaughterhouse and beef-packaging facility. Gateway Beef was formed in September 2003 by the Gateway Beef Cooperative, an organization of farmers and ranchers, together with Brach's Glatt Meat Markets, a grocery store in New York owned by Sam Brach. The Cooperative invested in, and sold cattle to, Gateway Beef, which then produced kosher beef for Brach's Glatt Meat Markets.

Control of Gateway Beef's finances is the crux of this case. Concerning his role

---

[1] All references in this order to "Gateway Beef" are to this entity, the limited liability company. The Court will use the full name "Gateway Beef, Inc." when it refers to that entity. "Gateway Beef Cooperative" will be shortened to the "Cooperative."

at the company, plaintiff testified he was not an owner, officer, shareholder, member, or manager, and that he did not attend meetings of the board of directors (although the bookkeeper believed he did attend them). "[I]t was very evident I was an employee," he said (Doc. 59, 63:13–19). Sam Brach notified a local bank that plaintiff was not and never had been a manager of Gateway Beef. Plaintiff also testified that he had never made a capital contribution to Gateway Beef. Nevertheless, because he knew all the parties involved, plaintiff filed Gateway Beef's articles of organization with the Illinois Secretary of State, signing them as the "organizer." The articles described Gateway Beef as managed by its managers, the Cooperative and Brach's Glatt Meat Markets.

Plaintiff was a signatory on both of Gateway Beef's checking accounts. He also filled out three forms for the accounts, called "corporate authorization resolutions," giving him authority to open accounts, endorse checks, withdraw or transfer funds, and enter into agreements for financial products on behalf of Gateway Beef. These forms affirm that the resolutions in them were made at a meeting of the board of directors. Plaintiff signed the forms above their signature lines, one of which had "Secretary" preprinted under it. The other two said "Manager or Designated Member."

The office manager and bookkeeper, Marsha Caughron, testified that Brach financed the company and was responsible for all bills. Caughron handled the payroll, accounts payable, accounts receivable, and some sales. She received all the

mail, including bills and notices from the IRS,[2] and sent them with printed checks attached overnight to Brach in New York. He would sign some of the checks, then send them back to her. Caughron estimated she would only get a fourth of the checks back. She said Brach's signature was required on all checks and his approval required for the payment of all bills; no one else could approve them. Plaintiff could not sign checks without Brach's approval either, she said. "Mr. Brach was adamant that he was the only one that ever signed checks. He made that very clear" (Doc. 68, 62:11–13). She added that plaintiff had nothing to do with payables or with payroll. At one point, plaintiff had to ask Brach for his own paycheck.

But plaintiff had check-signing authority. He wrote or signed over 1,700 checks from one checking account.[3] Indeed, he signed all of Gateway Beef's checks between January–May 2004, and most checks after that through July 2004, including payroll checks, checks to himself and his company (the Tarpoff Packing Company), and checks to the U.S. Treasury. Plaintiff explained that "whatever checks were given to me, I would look at them, glance at them, and sign them" (Doc. 59, 201:24–25). He looked at the bills provided with the checks to make sure they matched. But he did not ensure that Gateway Beef's accounts had sufficient funds before he wrote a check; he commented, "I had no idea what was in the account" (*id.*, 146:16–18). He never called the bank, asked a bookkeeper to check the balance, or

---

[2] Plaintiff also attested that all mail went to a P.O. Box and was retrieved by the book-keeper.

[3] Defendant provides a 57-page summary of Gateway Beef's checks written from October 2003–August 2004 (Doc. 64, Ex. H).

asked to see financial statements. Plaintiff could not recall whether he had ever refused to write or sign a check (*id.*, 162:16–18, 203:1–3). Nonetheless, he ventured that he could have refused and told Brach, "You're on your own. Got to sign everything yourself" (*id.*, 203:4–11).

Plaintiff signed checks in 2004 for Gateway Beef's delinquent 2003 taxes. He testified, however, that he did not know as of March 31 or June 30, 2004, whether Gateway Beef had paid its payroll taxes or whether the checks he'd signed were for delinquent taxes. Nor did he look into whether the payroll taxes had been paid. A pattern of writing the company's payroll checks without inquiring into the taxes continued through July 2004. Even so, plaintiff was aware of an employer's duty to pay withholding taxes; he had paid them himself in the past, as the president of a different company.

Brach directed the hiring and firing of employees at Gateway Beef. He would give instructions to plaintiff, who would then carry them out, working with the unions if necessary. Plaintiff interviewed new employees and suggested new hires to Brach and the Cooperative. With Brach's permission, plaintiff hired his sons when they were home from school. He had also hired employees at Gateway Beef, Inc. (a separate organization) who later became employees of Gateway Beef, LLC.

Gateway Beef lost money throughout its short existence. Plaintiff had advised Brach in the beginning that he expected Gateway Beef to lose $8,000–10,000 per week until improvements to the facilities could be made. Those improvements were never completed, though. At some point, Brach stopped paying the payroll taxes and

certain bills. Caughron calculated the payroll tax withholdings and would send the amounts to Brach. She sent him checks to pay the taxes, but he did not return them. When she pressed him on the issue, Brach told her to contact his accountant, Michelle Weiss. So Caughron faxed letters from the IRS to Weiss three or four times per week. She also notified the treasurer of the Cooperative, Bill Boston, that the taxes were not being paid. Caughron said she made statements to plaintiff that Brach was not paying the taxes, though she did not say when.

At least ten checks plaintiff wrote between March–May 2004 bounced. He testified that he only knew about one check at the time, however. As the head cattle buyer, plaintiff attended cattle auctions. At one auction, he wrote a check to Calloway Livestock for about $49,000. A week later when plaintiff returned to the auction barn, one of the owners informed him the Calloway check had bounced. Plaintiff immediately called Brach and others at Gateway Beef, but was unable to reach anyone. He finally spoke with the president of the Cooperative, Rob Meyer. But Meyer too failed to come up with funds to cover the check. Plaintiff then offered to cover it himself, but said he didn't have the money and Gateway Beef would need to pay him back. Meyer guaranteed that plaintiff would have his money back in a few days. Plaintiff was never repaid, however, and ultimately had to refinance his home.

Gateway Beef ceased operations in July 2004, and plaintiff left. Later, after learning some vendors had not been paid, he suspected that the withholding taxes had not being paid either. Toward the end of 2004 or early 2005, Boston told him Brach had not paid the taxes, and Caughron told him she had been receiving the

notices from the IRS.

The IRS has levied a total penalty of $66,693.02 against plaintiff to recover Gateway Beef's unpaid withholding taxes for the tax periods ending March 31 and June 30, 2004, under 26 U.S.C. § 6672 (Doc. 27, p. 7). Plaintiff brings this suit to recover money the IRS withheld from one of his tax refunds, as well as money he paid under protest, with interest. He also seeks an abatement of the remainder of the penalty. Defendant counterclaims to collect the remainder.

### III. JUDGMENT AS A MATTER OF LAW

In ruling on a renewed motion for judgment as a matter of law, the district court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b). The court may direct the entry of judgment as a matter of law only if there was not a legally sufficient evidentiary basis for the jury's verdict. *Thomas v. Cook Co. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir.), *cert. denied*, 131 S. Ct. 643 (2010); *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 902 (7th Cir. 2007); *Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1129 (7th Cir. 1997). The question for the court is whether, in light of the evidence, a reasonable jury could have found in favor of the nonmoving party. *Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 313 (7th Cir. 2011). Only if no rational jury could have found for the nonmoving party may the jury's verdict be overturned. *Thomas*, 604 F.3d at 301; *Waite v. Bd. of Trs. of Ill. Cmty. Coll. Dist. No. 508*, 408 F.3d 339, 343

(7th Cir. 2005).

The court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Sekulovski*, 639 F.3d at 313; *Waters v. City of Chi.*, 580 F.3d 575, 580 (7th Cir. 2009). The court may not weigh the evidence or make credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Thomas*, 604 F.3d at 300.

**A. Liability Under 26 U.S.C. § 6672**

Employers are required to withhold Social Security and income taxes from employees' wages. 26 U.S.C. § 3102, 3402; *United States v. Running*, 7 F.3d 1293, 1294 (7th Cir. 1993). Those withholdings must be held in trust for the benefit of the United States. 26 U.S.C. § 7501; *Running*, 7 F.3d at 1294. If the employer fails to do that, then certain individuals in the company may be personally liable under 26 U.S.C. § 6672. Further, an assessment of a tax deficiency by the IRS is presumed to be correct, so an individual against whom the assessment is made bears the burden of proving it is incorrect. *United States v. Kim*, 111 F.3d 1351, 1357 (7th Cir. 1997); *Running*, 7 F.3d at 1297.

To be personally liable, the individual must be (1) a "responsible person" who (2) has "willfully" failed to collect, account for, or pay over payroll taxes to the United States. *Jefferson v. United States*, 546 F.3d 477, 480 (7th Cir. 2008). Such a person is "liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." § 6672(a). A "person" under this section "includes

an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b); *accord Running*, 7 F.3d at 1297. "Corporate office does not, per se, impose the duty to collect, account for and pay over the withheld taxes." *Monday v. United States*, 421 F.2d 1210, 1214 (7th Cir. 1970). Rather, the duty "attaches to those with power and responsibility within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government." *Id.* (citing *Scott v. United States*, 354 F.2d 292, 296 (1965)). "This duty is generally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds." *Id.* at 1214–15. But officer status, or even employment with the company, is not required. *Haffa v. United States*, 516 F.2d 931, 936 (7th Cir. 1975).

**B. Responsible Person**

Defendant argues first that there was not a legally sufficient evidentiary basis for a reasonable jury to find that plaintiff was not a responsible person at Gateway Beef during the time period at issue. There were many factual disputes in this case, however, as well as credibility issues. The Court finds that nothing rises to an issue of law that must be taken away from the jury.

A person is responsible if "'he retains sufficient control of corporate finances that he can allocate corporate funds to pay the corporation's other debts in

preference to the corporation's withholding tax obligations.'" *Jefferson*, 546 F.3d at 480 (quoting *Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir. 1992)); *accord Running*, 7 F.3d at 1297; *United States Internal Revenue Serv. v. Charlton*, 2 F.3d 237, 240 (7th Cir. 1993). It is sufficient if the person has "'significant control over the disbursal of corporate funds.'" *Running*, 7 F.3d at 1297 (quoting *Purdy Co. of Ill. v. United States*, 814 F.2d 1183, 1188 (7th Cir. 1987)). Thus more than one person can be responsible. *Id.* "Having significant control does not mean having exclusive control over the disbursal of funds or the final say over whether taxes or bills are paid." *Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir. 1994). "[T]he key to liability under section 6672 is the power to control the decision-making process by which the employer corporation allocates funds to other creditors in preference to its withholding tax obligations.'" *Jefferson*, 546 F.3d at 480 (quoting *Bowlen*, F.2d at 728).

Factors indicating a person is responsible include holding corporate office, checkwriting authority (and authority to refuse to write checks), *Thomas*, 41 F.3d at 1114, serving on the board of directors, *Kim*, 111 F.3d at 1362, owning stock or holding an entrepreneurial stake in the corporation, *Bowlen*, 956 F.2d at 728, authority to disburse funds on behalf of the company, the ability to take out loans on behalf of the company, and the ability to hire and fire employees, *Charlton*, 2 F.3d at 240.

Here, certain points raised by the parties are not relevant. For instance, defendant asserts that plaintiff was the highest-paid individual at Gateway Beef. But

"compensation is not the touchstone for liability under section 6672." *Running*, 7 F.3d at 1298. Other points include plaintiff's involvement in day-to-day affairs of the company, his close contact with employees and the local bank, his union membership, and his office having once been a storage closet. The ultimate issue is whether plaintiff had sufficient control of Gateway Beef's finances that he could allocate funds to pay Gateway Beef's other debts in preference to its withholding-tax obligations.

So, of somewhat more relevance is defendant's argument that plaintiff "repeatedly" held himself out as the secretary (or member or manager), that he attended meetings of the board of directors, and that he was the sole organizer of Gateway Beef. Besides exaggerating, however, defendant is viewing the evidence in the light most favorable to itself, the moving party, which is incorrect on this motion. The only evidence of officer status was the preprinted bank forms. Plaintiff did not even write the titles on them himself. *See Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987) (taxpayer signed company documents as "secretary" or "secretary-treasurer"). Plaintiff testified that he was not an officer, member, or manager and that he had never attended a meeting of the board of directors. The jury was entitled to believe him.

Defendant next asserts that plaintiff could open accounts, endorse checks, withdraw funds, and enter agreements for financial products on behalf of Gateway Beef. Further, he wrote or signed over 1,800 checks. Therefore, defendant argues, plaintiff's ability to sign checks gave him the power to direct the finances of Gateway Beef by making decisions about which checks to write and sign. Yet signing checks,

even 1,800 checks, is not enough. *See Jefferson*, 546 F.3d at 481 (finding taxpayer responsible because his significant involvement in financial affairs "included more than simply writing checks"). Plaintiff testified that he did not make decisions about which checks to sign. He only looked at the checks to make sure they matched the bills, then signed them. And Caughron said he had nothing to do with payables. It is apparent that the jury gave greater weight to the witnesses' testimony than to the checks plaintiff wrote.

In reference to one of the factors above, defendant claims plaintiff had the authority to hire and fire employees—that he interviewed potential hires, made suggestions, and hired Caughron, his sons, and a cousin to work at Gateway Beef. By comparison, in *Thomas v. United States*, two taxpayers were found to be responsible partly because they could hire and fire personnel in their chains of command, possibly subject to "perfunctory" approval by the CEO. 41 F.3d at 1114. Here, plaintiff interviewed, offered suggestions, and carried out Brach's directions, none of which is authority to hire and fire personnel (subject to perfunctory approval). Plaintiff testified he could not hire his own sons for temporary work without Brach's permission. More importantly, though, this factor merely highlights the factual disputes in this case.[4]

Defendant next argues that plaintiff "invested" $50,000 in Gateway Beef when he covered the Calloway check. Yet the reasonable inference in plaintiff's favor is that

---

[4] Defendant's citation to the record does not indicate who hired either Caughron or plaintiff's cousin (*see* Doc. 59, 73:16–74:9, 140:3–9, 200:14–201:13). "Allegations of fact not supported by citation may, in the Court's discretion, not be considered." SDIL-LR 7.1(d).

he had so *little* control of Gateway Beef's finances he could not even recover his loan money. The jury also heard plaintiff testify that he made no capital contributions and was not an owner or shareholder.

Another factor is the authority to refuse to write checks. Defendant says plaintiff never refused to write or sign a check "even though it was within his ability to do so." Defendant therefore argues that plaintiff failed to show he could not have impeded Gateway Beef's business by refusing to sign or issue checks. *See Thomas*, 41 F.3d at 1113. On this theory, plaintiff allegedly "let millions of dollars flow out of Gateway Beef, LLC's accounts to creditors other than the United States, with his lone signature." But defendant again misstates the evidence by claiming it was within plaintiff's ability to refuse to write or sign checks. Plaintiff did not recall ever refusing. He suggested he probably could have, but that was speculation. Consequently, defendant's conclusion that plaintiff could have impeded the flow of dollars out of the company with his lone signature is unfounded. Further, Brach also signed checks (*see, e.g.*, Doc. 64, Ex. H, p. 49). The jury could have drawn the reasonable inference that he would have signed them himself had plaintiff refused.

And even if plaintiff did have authority to refuse to sign checks, that would not, by itself, constitute significant control over the disbursal of corporate funds. In *Thomas v. United States*, which defendant cites, the Seventh Circuit found sufficient evidence for a reasonable person to conclude that two of the taxpayers could have impeded the functioning of the company by refusing to sign checks and by refusing to permit the payroll to go forward until the company paid its taxes. 41 F.3d at 1114.

They were both officers of the company who supervised accounting, finance, and payroll. *Id.* They could determine whether to pay bills under $1,000 and could prioritize the payment of bills over $1,000. *Id.* Here, plaintiff had much less control than those taxpayers. He was not an officer; had no supervisory authority over accounting, finance, or payroll; and did not determine whether to pay or how to prioritize any payments. Similarly, in the other cases defendant cites, the taxpayers found to be responsible were all officers or shareholders of the companies. *See Running*, 7 F.3d at 1294, 1298 (vice president); *Bowlen*, 956 F.2d at 728 (owners, officers, and directors); *see also Jefferson*, 546 F.3d at 481 (president of the board of directors); *Purdy Co.*, 814 F.2d at 1187 (owner); *Monday*, 421 F.2d at 1215 (officer and owner).

The Court concludes that, in light of the evidence, a reasonable jury could have found plaintiff was not a responsible person. Plaintiff is therefore not liable under § 6672 and defendant's motion for judgment as a matter of law must be denied. Even so, the Court will consider defendant's arguments that plaintiff willfully failed to collect, account for, or pay over payroll taxes to the United States.

## C. Willfulness

Defendant sets forth a number of theories attempting to show, as a matter of law, that plaintiff acted willfully. All these theories depend on assertions about plaintiff's knowledge that were contested at trial, however. They depend on credibility issues, which cannot be decided by the Court on this motion.

Under 26 U.S.C. § 6672(a), a person who is responsible for collecting, accounting for, and paying payroll taxes is liable if he "willfully" fails to do any of those things. *Jefferson*, 546 F.3d at 480. In this context, willful means "'voluntary, conscious and intentional—as opposed to accidental—decisions not to remit funds properly withheld to the Government.'" *Id.* at 481 (quoting *Domanus v. United States*, 961 F.2d 1323, 1324 (7th Cir. 1992)). A responsible person is willful if he pays other creditors after he knows of the employer's failure to pay the withheld funds to the government. *Id.*; *United States v. Kim*, 11 F.3d 1351, 1357 (7th Cir. 1997). Willful can also mean that the person "'recklessly disregarded a known risk that the taxes were not being paid over.'" *Jefferson*, 546 F.3d at 481 (quoting *Kim*, 111 F.3d at 1357); *accord Mortenson v. Nat'l Union Fire Ins. Co.*, 249 F.3d 667, 670 (7th Cir. 2001); *Thomas*, 41 F.3d at 1114.

Defendant argues that plaintiff knew Gateway Beef had not paid the government and paid other creditors instead, again citing *Thomas v. United States*. 41 F.3d at 1114. Regarding direct knowledge, in *Thomas*, two of the taxpayers admitted knowing the company was failing to pay its withholding taxes. *Id.* Here, plaintiff made no such an admission. According to defendant, plaintiff knew about unpaid withholding taxes in the past, had received notices from the IRS, and was "continuously kept informed of the status of the unpaid taxes" (Doc. 64, p. 11).[5]

---

[5] Defendant presents these allegations in its argument about reckless disregard, but because defendant first asserts that plaintiff knew the taxes had not been paid here (Doc. 64, p. 9), the Court addresses the allegations here.

These are not facts in the record, however.[6] The IRS sent notices to Gateway Beef's offices at the packing facility (Doc. 59, 207:20–208:12), plaintiff signed checks for delinquent withholding taxes in 2004, and IRS account transcripts show that delinquent 2003 taxes were paid in 2004. But plaintiff testified he did not know whether Gateway Beef had paid its payroll taxes or whether the checks he'd signed were for delinquent taxes.[7] He was not receiving the IRS notices himself because they went to Caughron, and she passed them along to Brach and his accountant, Weiss, not to plaintiff. Plaintiff claimed that he first learned about the IRS notices and suspected the taxes had not been paid in late 2004, after the tax quarters at issue and after he had left Gateway Beef. These were all facts for the jury to assess.

Taking a different tack, defendant argues that plaintiff knew the withheld taxes were not being paid because he was aware of an employer's duty to pay its withholding taxes, having once paid them himself at a different company. Yet plaintiff still wrote over 1,700 of the 1,900 checks written on Gateway Beef's checking accounts during the defaulted periods, including payroll checks, without paying the taxes. As a result, defendant claims, he would have known that checks were not being written to the government. This is a negligence argument, though. Saying plaintiff was aware *in general* of an employer's duty to pay its payroll taxes, and what

---

[6] Defendant's citations to the record are not accurate (*see, e.g.*, Doc. 68, 130:17–24, 146:13–20, 147:2–8), and the Court has made a diligent effort to find the facts alleged, without success. *See* SDIL-LR 7.1(d).

[7] Defendant asserts that plaintiff never denied knowing that Gateway Beef was failing to pay the withholding taxes. On the contrary, as indicated above, he did deny it.

he would or should have known, is different from saying plaintiff voluntarily, consciously, and intentionally decided not to remit funds to the government.

Defendant also argues that plaintiff recklessly disregarded a known risk that the payroll taxes had not been paid. The Seventh Circuit has held that reckless disregard includes gross negligence, meaning the responsible person "'(1) clearly ought to have known that (2) there was a grave risk that withholding taxes were not being paid and if (3) he was in a position to find out for certain very easily.'" *United States v. Running*, 7 F.3d 1293, 1299 (7th Cir. 1993) (quoting *Wright v. United States*, 809 F.2d 425, 427 (7th Cir. 1987)).

Again, defendant points to plaintiff's having signed so many checks, including payroll checks, without ensuring the withholding taxes had been paid. According to defendant, plaintiff knew about mismanagement and the past failures to pay the taxes. Or, allegedly, he was in a position to find out for certain very easily because he worked at Gateway Beef every day and could have studied its records or the bank records. He also allegedly knew Gateway Beef was in financial trouble because he had projected losses of $8,000–10,000 per week and at least ten checks were returned for insufficient funds. Defendant concludes that plaintiff clearly ought to have known there was a grave risk the taxes were not being paid.

In a case cited by defendant, *United States v. Wright*, the taxpayer was the corporate secretary of a small company and one of only three principals. 809 F.2d at 426–27. As such, "[h]e had a right to look at [the company's books] and the know-how to understand them." *Id.* at 427–28. Merely "[a] glance would have revealed the

tax delinquencies." *Id.* at 428. He also knew the company had a history of not paying its withholding taxes and that its finances continued in a "parlous state." *Id.* at 427–28. On those facts, the court of appeals did not find clear error in the district court's conclusion that the taxpayer had acted recklessly in failing to inquire about the taxes. *Id.* at 428.[8] Here, plaintiff had check-signing authority and was a signatory on the bank accounts. That is not the same as being a corporate secretary or a principal, *i.e.*, one whose position gives one the right to look at the company's books. It is not known whether merely a glance at the books would have revealed Gateway Beef's delinquencies. And, as discussed earlier, plaintiff did not know about a history of not paying the taxes. There is also little or no evidence he knew the company was losing money. Plaintiff only knew about one of the returned checks (the Calloway check). And predicting losses in the beginning is one thing; a parlous state is another. On these facts, a reasonable jury could have found, quite readily, that plaintiff's actions did not amount to reckless disregard. It is not a question the Court can decide as a matter of law.

Defendant also contends that plaintiff was willful because he used "unencumbered funds" to pay creditors other than the United States. If a responsible person learns that withholding taxes were not paid in past quarters when he was also responsible, he is under a duty to use all unencumbered funds available to the

---

[8] The court cautioned, "Lest the reach of our decision be exaggerated, we emphasize that merely because a corporate officer has check-signing responsibilities and his corporation is in financial trouble, it does not follow that he can be held liable for any and all failures to pay withholding taxes." *Id.* at 428.

corporation to pay the taxes. *Kim*, 111 F.3d at 1157 (citing *Garsky v. United States*, 600 F.2d 86, 91 (7th Cir. 1979)). A responsible person cannot argue that the actual funds withheld were spent and that funds acquired later were not "trust funds" owed to the United States. *Garsky*, 600 F.2d at 90. But defendant does not argue that here. Defendant is actually restating a definition of willfulness (paying other creditors after knowing of the employer's failure to pay the withheld funds to the government). This case was not about unencumbered funds because plaintiff did not learn about the unpaid taxes until after Gateway Beef had closed and he had left.

Finally, defendant inserts a paragraph in its brief complaining that plaintiff set forth erroneous theories of the case: that Brach was responsible, and therefore plaintiff was not; that plaintiff only acted on Brach's orders; and that Brach had the final say on which bills were ultimately paid (Doc. 64, p. 14). The Court does not find that plaintiff argued these theories, however, and defendant does not include citations to relevant legal authority and to the record. Since the allegations are not supported by citation, the Court declines to consider them. *See* SDIL-LR 7.1(d).

Accordingly, the Court finds that a reasonable jury could have found, even if plaintiff was a responsible person, that he did not willfully failed to collect, account for, or pay over payroll taxes to the United States. This forms a separate basis for finding plaintiff not liable under § 6672 and for denying defendant's motion for judgment as a matter of law.

## IV. RULE 59 MOTION FOR NEW TRIAL

### A. The Weight of the Evidence

After a jury trial, the district court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The motion may be granted if the verdict is "'against the clear weight of the evidence or the trial was unfair to the moving party.'" *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2003)); *accord Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011). In reviewing the motion, the court has the power to "get a general sense of the weight of the evidence, assessing credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia*, 650 F.3d at 633.

Here, in three sentences, defendant claims that its motion for judgment as a matter of law and its statement of facts show that the weight of the evidence does not support the jury's verdict. Defendant offers no analysis, however, so it waives this argument. *E.g., United States v. Adams*, 625 F.3d 371, 378 (7th Cir. 2010). In any case, the principal evidence offered by defendant was plaintiff's check-signing authority and the checks bearing his signature. The two witnesses who had actually worked at Gateway Beef testified, credibly, that plaintiff played virtually no role in finances—once, he even had to ask for his own paycheck. And plaintiff did not learn about the delinquent taxes until after Gateway Beef had closed. The Court cannot conclude, given the testimony and facts presented, that the jury's verdict is against

the clear weight of the evidence.

## B. Jury Instructions

For a new trial to be granted based on an erroneous jury instruction, the moving party must show that the instructions, as a whole, were not sufficient to inform the jury of the applicable law and that an instruction so misled the jury that it prejudiced the moving party. *Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 308 (7th Cir. 2011); *Fox v. Hayes*, 600 F.3d 819, 843 (7th Cir. 2010); *Cruz v. Safford*, 579 F.3d 840, 843 (7th Cir. 2009). An instruction can cause prejudice by being confusing or misleading. *Cruz*, 579 F.3d at 840; *Boyd v. Ill. State Police*, 384 F.3d 888, 894 (7th Cir. 2004).

Defendant requested the following be given as Instruction No. 22:

> A person with check-writing authority is not absolved of liability under § 6672 merely because he wrote checks, or did not write checks, under orders from a superior, even if disobeying a superior's orders would result in termination.

(Doc. 60, 9:5–16). When the Court declined that instruction, defendant objected that the following addition should be made to Instruction No. 17 or 18 instead:

> A person need not have the final word as to which creditor be paid so long as he had significant control.

(*id.*, 9:5–16). Defendant cited *Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir. 1994) and *Bowlen v. United States*, 956 F.2d 723, 728 (7th Cir. 1992). But the Court denied that "final word" addition because the subject matter had been covered

by another instruction and the Court did not want to unduly highlight the issue (Doc. 60, 9:17–19).

Instructions given to the jury included these:

> Under the law you are allowed to consider, among other evidence of whether a person is a responsible person, factors including possessing authority to sign checks, … significant control over a corporation's finances, … .

(*id.*, 27:22–28:3).

> The fact that someone else at the corporation may also have been responsible for collecting, accounting for, or paying over withheld taxes will not relieve a person of responsibility. There may be more than one responsible person. Even if another individual is "more responsible" or has more authority over the employer's financial affairs, that does not make another not responsible under Section 6672. Therefore, even if you determine that someone else was more responsible than Mr. Tarpoff, that should have no effect on your determination as to whether Mr. Tarpoff was also responsible.

(*id.*, 28:5–15). The following was Instruction No. 17:

> The law provides that a person is a "responsible person" under Section 6672 "if he retains sufficient control of corporate finances such that he can allocate corporate funds to pay the corporation's other debts in preference to the corporation's withholding tax obligations." Sufficient control does not mean exclusive control.

(*id.*, 29:18–23). The following was Instruction No. 18:

> A person need not have "exclusive" control over the corporation's financial affairs or general decision-making in order to be responsible for collecting, accounting for, or paying over the taxes. It is sufficient that a person has significant control. Thus, if his control is exercised jointly with others, the person is no less responsible.

(*id.*, 29:5–10).

Defendant objects that the instructions given did not sufficiently instruct the jury that the law does not afford a defense to liability to those who rely on orders or authorization from superiors when writing checks, as stated in the proposed Instruction No. 22. Defendant says it is no defense to liability that a person wrote checks, or did not do so, on orders from a superior.

This argument was not made at trial, however, and the mere *tendering* of a proposed instruction is not enough to preserve an objection. *Consumer Prods. Research & Design, Inc. v. Jensen*, 572 F.3d 436, 439 (7th Cir. 2009); *Griffin v. Foley*, 542 F.3d 209, 221 (7th Cir. 2008); *Schobert v. Ill. Dep't of Transp.*, 304 F.3d 725, 729 (7th Cir. 2002). The party must make its objection on the record, "stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1); *accord Jensen*, 572 F.3d at 439; *Schmitz v. Canadian Pac. Ry. Co.*, 454 F.3d 678, 683 (7th Cir. 2006). And the party must object when given the opportunity to do so, out of the jury's hearing and before the instructions and arguments are delivered. Fed. R. Civ. P. 51(c)(2) & (b)(2); *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 434 (7th Cir. 2009); *Griffin*, 542 F.3d at 221. Defendant here did not object on the record for a failure to give Instruction No. 22 (nor state distinctly the matter objected to and the grounds for such an objection). Instead, defendant objected that it wanted the addition about having the "final word" given.

Nevertheless, even if a party does not properly object, "[a] court may consider a plain error in the instructions … if the error affects substantial rights." Fed. R. Civ.

P. 51(d)(2); *accord Lewis*, 590 F.3d at 434; *Jensen*, 572 F.3d at 439; *Griffin*, 542 F.3d at 222. An error affects substantial rights to warrant reversal if it is "'of such great magnitude that it probably changed the outcome of the trial.'" *Lewis*, 590 F.3d at 434 (quoting *United States v. Noel*, 581 F.3d 490, 499 (7th Cir. 2009); *accord Mesman v. Crane Pro Servs.*, 512 F.3d 352, 357 (7th Cir. 2008).

But omitting Instruction No. 22 was not a plain error. On the contrary, to say "[a] person with check-writing authority is not absolved of liability" means that check-writing authority makes the person liable, which would have been an error. The instructions given correctly informed the jury that check-writing authority, the "authority to sign checks," is among the factors to consider. *See, e.g.*, *Bowlen*, 956 F.2d at 728. Moreover, defendant's argument, that "it is no defense to liability that a person wrote checks or did not write checks" on orders from a superior, is off the mark. In *Thomas*, the court of appeals declined to hold, as a matter of law, that following orders from a superior absolves a responsible person of liability. *Thomas*, 41 F.3d at 1115. Specifically, the jury had heard about the taxpayers' allegedly "helpless, subservient roles" to their superior but still found they were both responsible and willful. *Id.* at 1115–16. The court reviewed the facts (including that the taxpayers supervised finance and accounting) and concluded there was "plenty of evidence" for the jury reasonably to reach its verdict. *Id.* at 1116. Thus, *Thomas* actually suggests following orders from a superior *could* be a viable argument for a

taxpayer, depending on the facts.[9] Consequently, the Court does not find that omitting Instruction No. 22 was plain error. This discussion about Instruction No. 22 could end here without considering whether defendant's substantial rights were affected. *See Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 387 (7th Cir. 2011). But the Court will briefly discuss that below.

Regarding the "final word" addition, defendant claims the jury was not sufficiently informed that the law does not require a person to have final say or the last word on financial activities to be responsible. *See Thomas*, 41 F.3d at 1113 (citing *Bowlen*, 956 F.2d at 728) ("[S]ignificant control does not mean having exclusive control … or the final say over whether taxes or bills are paid."). While the instructions given did not specifically state the a person *need not have the final word*, they did convey both that there can be more than one responsible person and that another person may have more authority over financial affairs. Defendant's addition would have been cumulative because a person who has the final word *is* a person who has more authority over financial affairs. The instructions also said "[i]t is sufficient that a person has significant control," which does not suggest the person must have the final word; it suggests having the final word is unnecessary. Therefore, on reviewing the instructions given, the Court finds that they were, as a whole, sufficient to inform the jury of the applicable law.

Defendant refers to its earlier complaint that plaintiff relied on "erroneous

---

[9] Indeed, the court says one of the taxpayers "simply waited too long to quit to shield himself from liability as a matter of law. Had he quit immediately … or even shortly thereafter, we might find differently." *Id.* at 1116.

theories"; namely, that he acted only on Brach's authority, and that Brach had the final say on which bills were paid. Again, however, defendant waives this point by not citing to the record. Moreover, the Court has already reviewed the considerable evidence about plaintiff's role in the company, as well as the holding in *Thomas*.

Defendant believes it was prejudiced by the omitted instructions. The jury asked these questions during deliberations:

> (1) What was the procedure for writing, signing, approving checks and mailing checks for the period of January–June 2004?
> (2) Who determines which checks get mailed?

(Doc. 60, 87:12–15). Defendant says those questions show the jury was "hung up on whether, how, and by whom bill payments needed to be approved, and who had final say, via the ability to determine which checks were mailed, and to which creditors."

When the jury sent out these questions, both parties agreed they were factual issues. Defendant's counsel recommended that the jurors look at everything in evidence, including the testimony and documents (Doc. 60, 88:4–6). The Court prepared the following proposed answer: "You will have to be guided by the evidence presented at trial and any reasonable inferences to be drawn from that evidence" (*id.*, 88:7–10). Defendant had no objection (*id.*, 11–13).

Plaintiff responds that defendant therefore waived this argument. It could have objected to the proposed answer and offered a supplemental instruction. *See United States v. Willis*, 523 F.3d 762, 775 (7th Cir. 2008) (by agreeing to the court's response to a jury note, appellant waived his objection on appeal); *United States v.*

*Askew*, 403 F.3d 496, 505 (7th Cir. 2005). Yet defendant is suggesting that the jury's questions are evidence of prejudice, not objecting to the Court's proposed answer. So it would not seem waiver applies.

In addition to waiver, plaintiff responds that defendant is merely speculating about whether the jury was confused, and speculation is not sufficient to support a motion for a new trial. *See Schandelmeier-Bartels*, 634 F.3d at 387. The Court agrees. It is far from clear the jury was confused about the law. Indeed, the Court still agrees with defendant's response at trial that the jury's questions were factual issues. This case was highly fact specific, and the process of paying bills was not fully explained. For instance, Caughron testified that no one but Brach could sign checks, but plaintiff did actually sign most of the checks. The jury was left to sort out these and (many other) details. The Court cannot speculate about what else the questions might have meant.

Finally, defendant could not have been prejudiced by the omission of the "final word" addition. For one, plaintiff did not argue he would have paid the taxes but someone else had the final word and did not allow it. He claimed that he merely signed the checks put in front of him. And there were many other facts available for the jury to find that plaintiff was not responsible and not willful. Likewise, omitting proposed Instruction No. 22 could not have affected defendant's substantial rights because plaintiff did not argue he would have paid the taxes but his superior ordered him not to. Consequently, even if omitting that instruction was plain error, it was not of such great magnitude that it probably changed the outcome of the trial.

**V. Conclusion**

For the reasons above, defendant United States of America's renewed motion for judgment as a matter of law and its alternative motion for a new trial (Doc. 64) are **DENIED**. The Court allows judgment on the jury's verdict. Plaintiff's motion to supplement is **GRANTED** (Doc. 70).

**IT IS SO ORDERED**.

Signed this 15th day of February, 2012.

David R. Herndon
2012.02.15
15:04:13 -06'00'

**Chief Judge**
**United States District Court**